**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kelly Monroe Ogden, | No. CV-18-00415-TUC-EJM |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Kelly Monroe Ogden brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of Social Security ("Commissioner"). Plaintiff raises two issues on appeal: 1) the Administrative Law Judge ("ALJ") failed to perform an appropriate analysis under Social Security Ruling ("SSR") 13-2p to determine whether Plaintiff's alcohol use was material to the determination of disability; and 2) the ALJ gave inappropriate weight to the treating source opinions of Dr. Kendra Drake and Nurse Practitioner Diane Thomas. (Doc. 16).

Before the Court are Plaintiff's Opening Brief, Defendant's Response, and Plaintiff's Reply. (Docs. 16, 21, & 22). The United States Magistrate Judge has received the written consent of both parties and presides over this case pursuant to 28 U.S.C. § 636(c) and Rule 73, Federal Rules of Civil Procedure. For the reasons stated below, the Court finds that the Commissioner's decision should be affirmed.

## I.  Procedural History

Plaintiff filed an application for supplemental security income on July 2, 2014.

(Administrative Record ("AR") 116). Plaintiff alleged disability beginning on May 13, 2014 based on depression, anxiety, stroke, partial paralysis, incontinence, homelessness, and indigency. (AR 116). Plaintiff's application was denied upon initial review (AR 133) and on reconsideration (AR 134). A hearing was held on February 9, 2017 (AR 76) and a second hearing was held on July 26, 2017 (AR 99), after which ALJ Laura Speck Havens found, at Step Five, that Plaintiff was not disabled because he could perform work existing in significant numbers in the national economy. (AR 24). On July 24, 2018 the Appeals Council denied Plaintiff's request to review the ALJ's decision. (AR 1).

## II. Factual History[1]

Plaintiff was born on March 30, 1973, making him 41 years old at the alleged onset date of his disability. (AR 116). He previously filed applications in 2006 and 2011 that were denied. (AR 117). Plaintiff attended the 9th grade four times and did not pass it; he then withdrew from school. (AR 80). He has worked primarily as a dishwasher. (AR 295).

### A. Medical Testimony

#### i. Dr. Kendra Drake

Plaintiff saw Dr. Kendra Drake on February 15, 2017 to establish care for his history of stroke. (AR 1062). Plaintiff was using a walker but could drive, and reported pain on the left side with pins and needles sensation and spasms of the right hand. Dr. Drake noted the following on exam: abstraction and judgment are questionable; memory function for recent and remote is poor; patient follows complex commands; muscle bulk and tone normal throughout; fine coordination in the hands is poor; patient rises from chair with difficulty; ambulates with a cane; hemiparetic gait on the left; sensitive to touch on the left. (AR 1063). Dr. Drake assessed history of right pontine hemorrhage with extension into right cerebellum and left sided neuropathic pain. (AR 1063). The plan was to refer Plaintiff to occupational therapy to assess his need for a walker and improve

---

[1] While the undersigned has reviewed the entirety of the record in this matter, the following summary includes only the information most pertinent to the Court's decision on Plaintiff's claims on appeal.

his gait, and try Gabapentin for neuropathic pain. (AR 1064).

Plaintiff saw Dr. Drake on April 20, 2017 for a follow-up. (AR 1106). He reported inability to walk some days and more problems with spasms and pain in his right hand. He tried Gabapentin with minimal improvements in his left-sided paresthesias. Dr. Drake noted the following on exam: abstract and judgment are questionable; mood and affect appropriate; attention span is normal; memory function for recent and remote is fair; patient follows complex commands; fine coordination testing of the hands is poor; patient rises from chair with difficulty; ambulates with a cane; hemiparetic gait on the left; sensitive to touch on the left. (AR 1107). The plan was a brain MRI due to fluctuations and possible worsening of symptoms, nerve study for right arm pain and spasms, and increase Gabapentin. (AR 1108). A May 26, 2017 MRI showed no acute intracranial abnormality, small chronic hemorrhage in the right lateral aspect of upper pons, and unremarkable MR angiography of the brain and neck. (AR 1116). A May 30, 2017 EMG/NCS nerve study was normal. (AR 1109).

Dr. Drake completed a physical residual functional capacity questionnaire on July 11, 2017. (AR 1155). Plaintiff's diagnoses were right pontine hemorrhage with extension into cerebellum, left neuropathic pain and paresthesias, hypertension, and dyslipidemia, and his prognosis was fair. His symptoms were problems with gait and balance, and left-sided pain and tingling. She indicated the following restrictions: Plaintiff's pain or other symptoms were severe enough to interfere with attention and concentration needed to perform simple work tasks "frequently"; he did not need to lie down or recline for more than 1.5 hours during the workday; could sit for 2 hours; stand/walk for 1 hour; used a cane; needed to shift positions every 10 minutes; could occasionally lift 10 pounds; had no significant limitations with reaching, handling, or fingering; did not need breaks beyond the usual 15 minutes in the morning and afternoon and 30 minute lunch; was not a malingerer; and would be absent 4 or more days a month due to impairments or treatment. (AR 1155–1156). Dr. Drake did not note any additional limitations that would affect Plaintiff's ability to perform work on a sustained basis. (AR 1156).

1          ii.    N.P. Diane Thomas

2          Plaintiff saw N.P. Diane Thomas for a new patient visit on November 30, 2016.

3   (AR 1082). He reported a history of stroke with partial left side paralysis, neuropathy,

4   and hypersensitivity, some memory loss, drinking 6–12 beers a day to help him sleep,

5   depression better, and that he used a cane or walker all the time. (AR 1082–1083). On

6   exam Thomas noted left lower extremity with some loss of strength causing balance

7   issues, left hand grip weaker than right, tremor to hands, and normal mood and affect.

8   (AR 1084). Plaintiff declined to decrease his drinking, and his depression screening

9   results showed no sign of depression. (AR 1086). The recommendation was to follow-up

10  in 2 months to recheck cholesterol, and limit alcohol and smoking. (AR 1088).

11         Plaintiff saw Thomas again on March 1, 2017 for a follow-up. (AR 1077). He

12  reported no alcohol for 5 days and no withdrawal symptoms, and that his depression was

13  better. On exam he was ambulatory without difficulty, had a steady gait, upper and lower

14  extremity strength was equal and appropriate for age, left side of the body was tender to

15  gentle palpation, and psychiatric exam was normal. (AR 1079).

16         Thomas completed a physical residual functional capacity questionnaire and noted

17  that she had three appointments with Plaintiff from November 30, 2016 to the date she

18  completed the form, July 5, 2017. (AR 1151). Plaintiff's diagnoses were stroke with

19  residual weakness, alcoholism, HTN, HLD, GERD, and manic depressive, and his

20  prognosis was stable. His symptoms were trouble with balance, loses control of left leg,

21  needs cane, and cognition decreased from last year. She indicated the following

22  restrictions: Plaintiff's pain or other symptoms were severe enough to interfere with

23  attention and concentration needed to perform simple work tasks "constantly"; he needed

24  to lie down or recline for more than 1.5 hours a day; could sit 5–6 hours; stand 0 hours

25  but "brief movements over 5–10 minutes"; he used a walker; needed to shift positions

26  every 90 minutes; could never lift; had significant limitations with reaching, handling,

27  and fingering and could reach and handle for 2% of the workday but never finger; needed

28  breaks because some days he was unable to concentrate and his arm movements were

limited by pain and coordination; he was not a malingerer; he would miss 4 or more days a month; and he had additional limitations of bilateral tremor, weakness, and cognitive/memory delays from his stroke, and alcoholism. (AR 1151–1152).

### iii. Dr. Ashok Khushalani

At the second hearing before the ALJ on July 26, 2017, Dr. Khushalani testified as a medical expert. He opined that Plaintiff's primary mental health impairment was alcohol dependency and noted that Plaintiff had been diagnosed with major depressive disorder mild, cognitive disorder, depression, and anxiety. (AR 105). Dr. Khushalani stated that Plaintiff's impairments did not meet or equal a listing. (AR 106). He opined that Plaintiff would have "difficulty doing detailed and complex tasks" and that his "exposure to [the] public should be minimal or sporadic or infrequent." Those were Plaintiff's only mental health work-related restrictions. When the ALJ questioned whether exposure to the public should be occasional, meaning "very little to one-third of the time," Dr. Khushalani stated yes. Dr. Khushalani further stated that these restrictions were without the use of alcohol and that if Plaintiff chose to drink, "his parameters will change drastically." (AR 107).

On questioning by Plaintiff's attorney as to what Plaintiff's limitations would be with alcohol, Dr. Khushalani stated "I think he's had mild difficulties in most of the parameters in addition to understanding information and [INAUDIBLE] concentration as well as manage himself." (AR 107). He noted that in Plaintiff's last exam, despite drinking two beers, the diagnosis was cognitive mild, and that even when Plaintiff was using alcohol, his depression was characterized as mild. (AR 108). Dr. Khushalani thought that the marked limitation in carrying out simple instructions that Dr. Abreu assessed would be in the context of using alcohol. When asked whether he agreed with Dr. Abreu's opinion that Plaintiff had a long history of drinking, likely causing irreversible cognitive damage, Dr. Khushalani stated:

> I don't think--it would be hard to project that . . . even though he says there's cognitive difficulty, first of all, he's not sure if it was because of alcohol or it was of the stoke and all [sic] exam, the deficits are not that severe [INAUDIBLE] So

there's a good chance that he will recover. I cannot categorically say that he will not be [INAUDIBLE]

(AR 108–109). Dr. Khushalani further opined that Dr. Abreu's assessment of a marked limitation in simple tasks was really not credible because Plaintiff "was able to do several simple tasks, which would indicate that he should not have any difficulty doing simple tasks." (AR 109). When Plaintiff's attorney asked whether the marked limitation Dr. Khushalani thought Plaintiff would have with alcohol was based on an exhibit or the doctor's opinion experience, Dr. Khushalani stated that it was based on his 35 years of experience.

B.   <u>ALJ's Findings</u>

The ALJ found that Plaintiff had the severe impairments of cerebral vascular accident, neurocognitive disorder, depression, and anxiety. (AR 26).

The ALJ also considered the Paragraph B criteria set out in the social security disability regulations for evaluating mental disorders. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00.[2] The ALJ found Plaintiff had moderate limitation in understanding, remembering, or applying information because his memory was poor but he also scored 29/30 on the MMSE, indicating his functioning is near normal at least some of the time. (AR 27). The ALJ also found Plaintiff had moderate limitations in interacting with others due to memory impairments, affective problems, and alcohol abuse, and Plaintiff's reported social isolation. The ALJ further found that Plaintiff had moderate limitations in

---

[2] Mental impairments are evaluated using the technique outlined in 20 C.F.R. § 404.1520a. The Commissioner must first evaluate the claimant's symptoms, signs, and laboratory findings to determine whether the claimant has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b). If the Commissioner determines that the claimant does have a medically determinable mental impairment, the Commissioner must specify the findings that substantiate the presence of the impairment, and then rate the degree of functional limitation resulting from the impairment. *Id*. The Commissioner considers four areas of functional limitation: ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(4). The degree of limitation is rated as none, mild, moderate, marked, or extreme. *Id*. The Commissioner then determines the severity of the mental impairment. 20 C.F.R. § 404.1520a(d). If the Commissioner rates the degree of limitation as "none" or "mild," the Commissioner will generally conclude that the impairment is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities. *Id*.

concentration, persistence, or maintaining pace, and noted that his concentration was described as poor. Finally, the ALJ found Plaintiff had moderate limitations in adapting or managing oneself because he reported difficulties with self-care due to fatigue but was also able to do some light chores and shop for groceries. Because Plaintiff did not have at least two "marked" limitations or one "extreme" limitation, the Paragraph B criteria were not satisfied.

The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical and other evidence of record, and Plaintiff's allegations exceeded the limitations reasonably expected from the medical findings. (AR 28, 33). "For example, [Plaintiff's] treating physicians consistently characterized the impairments as 'minimal', 'mild', 'slight', 'normal', and 'unremarkable', with reference to the clinical and laboratory findings, which seems quite disproportionate to the severity of pain [Plaintiff] has alleged." (AR 33). The ALJ also noted Plaintiff's non-compliance with treatment, his use of non-prescribed walker/cane, and that Plaintiff was able to do certain activities that would have been too difficult with the severity and duration of hand problems he alleged. (AR 33–34).

The ALJ gave substantial weight to medical expert Dr. Khushalani's testimony because the limitations he assessed were consistent with the record and Plaintiff's activities of daily living. (AR 31).

The ALJ also gave substantial weight to Dr. Rothbaum's consulting physician opinion, except for the weight lifting and carrying restrictions. (AR 31–32). The ALJ viewed the case most favorably to Plaintiff and instead assessed ability to lift and carry at the light exertional level. (AR 32).

The ALJ also gave substantial weight to the state agency physician opinion on reconsideration because it concurred with the medical expert's testimony and was the same as the ALJ's RFC assessment. (AR 32). The ALJ noted that the opinion was "based on the evidence of record, including limited objective findings yet enough to support a

limitation to light exertion with limitations in social interactions and limitation to simple, repetitive tasks."

The ALJ gave limited weight to the psychological consultant, Dr. Vidal's, findings because the evidence was inconsistent: Plaintiff either failed to complete the testing or performed in the extremely low range and the examiner cautioned against interpreting the scores too literally; Plaintiff refused to write a sentence due to his wrist giving out but then accurately copied two geometric figures; Plaintiff's MRFC score suggested little to no impairment, his FSIQ score was borderline, and his Perceptual Reasoning Index score was 94. (AR 30). The ALJ gave great weight to the portion of the opinion indicating the scores were not reliable and incomplete, and little weight to the portion of the opinion indicating significant limitations and low scores because it was inconsistent and had unreliable findings. (AR 31).

The ALJ also gave limited weight to psychological consultant Dr. Abreau's opinion because it was not consistent with the other evidence of record and it appeared that the limitations assessed were based on Plaintiff's subjective complaints instead of findings on examination. (AR 32).

Finally, the ALJ gave limited weight to Dr. Drake's opinion and N.P. Thomas's opinion because they were derived from a short period of treatment of one to three visits, did not depict a 12-month duration for treatment, and appeared to be based on Plaintiff's subjective complaints without basis in their own treating records to substantiate such significant limitations. (AR 32–33).

The ALJ found that Plaintiff had the RFC to perform light work with the following limitations: lift and carry 20 pounds occasionally and 10 pounds frequently; sit for 6 hours and stand/walk for 6 hours in an 8-hour workday; frequently climb ramps/stairs, stoop, kneel, crouch, balance, and crawl; never climb ropes or scaffolds; occasionally avoid moving machinery and other hazards; occasionally work at unprotected heights; can have occasional interaction with the public, coworkers, and supervisors; and can

perform simple, repetitive routine tasks.[3] The ALJ determined that Plaintiff had no past relevant work but that he was able to perform other jobs existing in significant numbers in the national economy such as plastic inspector/hand packager, marker, and bottle packer. (AR 34–35). The ALJ therefore concluded Plaintiff was not disabled. (AR 35).

## III. Standard of Review

The Commissioner employs a five-step sequential process to evaluate SSI and DIB claims. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Heckler v. Campbell*, 461 U.S. 458, 460–462 (1983). To establish disability the claimant bears the burden of showing he (1) is not working; (2) has a severe physical or mental impairment; (3) the impairment meets or equals the requirements of a listed impairment; and (4) the claimant's RFC precludes him from performing his past work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At Step Five, the burden shifts to the Commissioner to show that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, she does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g), 1383(c)(3). The court may overturn the decision to deny benefits only "when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). As set forth in 42 U.S.C. § 405(g), "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Valentine*, 574 F.3d at 690 (internal quotations and citations omitted), and is "more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. The Commissioner's decision, however, "cannot be affirmed simply by isolating a specific

---

[3] "Occasional" is defined as very little up to one-third of the time; "frequent" is defined as one-third and up to two-thirds of the time.

quantum of supporting evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998) (citations omitted). "Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland*, 257 F.3d at 1035 (internal quotations and citations omitted).

The ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, [the court] must defer to the ALJ's conclusion." *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

Additionally, "[a] decision of the ALJ will not be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The claimant bears the burden to prove any error is harmful. *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011) (citing *Shinseki v. Sanders*, 556 U.S. 396 (2009)). An error is harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citations omitted); *see also Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). "[I]n each case [the court] look[s] at the record as a whole to determine whether the error alters the outcome of the case." *Molina*, 674 F.3d at 1115. In other words, "an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion." *Id.* (internal quotations and citations omitted). Finally, "[a] claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be." *Strauss v. Comm'r Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

## IV.    Discussion

Plaintiff  argues that substantial evidence does not support the ALJ's decision

because the ALJ failed to perform an appropriate analysis under SSR 13-2p, and because the ALJ gave inappropriate weight to the treating source opinions of Dr. Kendra Drake and N.P. Diane Thomas. Plaintiff states that remand for further consideration of the evidence, rather than an award of benefits, is the appropriate remedy due to issues in the transcription and substance of Dr. Khushalani's testimony.

The Commissioner argues that because the ALJ found that Plaintiff was not disabled even when using alcohol, the ALJ was not required to perform an analysis under SSR 13-2p. The Commissioner further argues that Plaintiff takes Dr. Khushalani's testimony out of context and contends that Dr. Khushalani found that Plaintiff would have only mild limitations in performing tasks when drinking. Finally, the Commissioner argues that the ALJ's medical weight findings are reasonable because there are numerous inconsistences in the record between Plaintiff's subjective complaints and the objective medical findings.

The Court finds that the ALJ did not err in failing to perform a materiality analysis pursuant to SSR 13-2p. The Court further finds that the ALJ's medical weight findings are supported by substantial evidence in the record. Accordingly, the Court finds that the Commissioner's decision should be affirmed.

A.    SSR 13-2p

Plaintiff first argues that the ALJ erred by failing to perform a proper analysis under SSR 13-2p to determine whether substance abuse was material to the disability determination. However, Plaintiff's analysis ignores the plain requirements under the applicable regulations that materiality of drug addiction or alcoholism ("DAA") only becomes an issue if there is an initial finding that the claimant is disabled considering all of his impairments, including those caused by DAA. If there is no disability finding, the ALJ does not proceed to the materiality determination.

Pursuant to 42 U.S.C. § 423(d)(2)(C), an individual is not disabled "if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." To determine whether

the DAA is a contributing factor material to the determination of disability, the ALJ determines whether the claimant's other impairments would improve to the point of nondisability in the absence of the DAA. SSR 13-2p, 2013 WL 621536 at *7. The Ninth Circuit has made clear that the ALJ must first conduct the five-step sequential analysis without separating out the impact of DAA. *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001) ("[t]he implementing regulations make clear that a finding of disability is a condition precedent to an application of [42 U.S.C.] § 423(d)(2)(C)." (internal quotations and citations omitted)). As the *Bustamante* court explained,

> It follows that an ALJ should not proceed with the analysis under §§ 404.1535 or 416.935 if he or she has not yet found the claimant to be disabled under the five-step inquiry. *See Drapeau*, 255 F.3d 1211, 1214 ("The ALJ cannot begin to apply [42 U.S.C.] § 423(d)(2)(C) properly when, as here, he has not yet made a finding of disability.") In other words, an ALJ must first conduct the five-step inquiry without separating out the impact of alcoholism or drug addiction. If the ALJ finds that the claimant is not disabled under the five-step inquiry, then the claimant is not entitled to benefits and there is no need to proceed with the analysis under 20 C.F.R. §§ 404.1535 or 416.935. If the ALJ finds that the claimant is disabled and there is "medical evidence of [his or her] drug addiction or alcoholism," then the ALJ should proceed under §§ 404.1535 or 416.935 to determine if the claimant "would still [be found] disabled if [he or she] stopped using alcohol or drugs." 20 C.F.R. §§ 404.1535, 416.935.

262 F.3d at 955; *see* SSR 13-2p; *see also Para v. Astrue*, 481 F.3d 742, 746–47 (9th Cir. 2007); *Hoban v. Colvin*, 2016 WL 4059200, *3 (D. Or. July 27, 2016) ("Bustamante requires a two-step process."). If the remaining limitations would not be disabling after applying the sequential evaluation a second time, then the DAA is a contributing factor material to the determination of disability and the claim is denied. 20 C.F.R. §§ 404.1535, 416.935; SSR 13-2p, 2013 WL 621536 at *4.

Here, the ALJ conducted the five-step inquiry and determined that Plaintiff was not disabled because he was able to do other work. Because the ALJ did not find that Plaintiff was disabled, the ALJ was not required to conduct the five-step inquiry a second time to determine whether DAA was material to the disability finding. *See* SSR 13-2p at *4 ("Under the Act and our regulations, we make a DAA materiality determination only

- 12 -

when . . . we find that the claimant is disabled considering all impairments, including the DAA.").

Plaintiff relies on *Hoban* for his contention that "where it is not possible to separate the limiting effects of the co-occurring mental disorder from those of DAA, then DAA is not material[,]" but Plaintiff's argument is misplaced and again confuses the materiality analysis. (Doc. 16 at 11). Here, the ALJ did not find that DAA was material (because the ALJ did not conduct a materiality analysis), thus there can be no claimed error based on an alleged inability to separate out the limiting effects of DAA from a co-occurring mental disorder. Again, as explained above, the materiality analysis is only required if the claimant is found disabled when the effects of DAA are taken into account. While Plaintiff emphasizes the difficulty in ferreting out the effects of DAA when co-occurring mental disorders cause the same type of symptoms, the initial question remains the same: is the claimant disabled considering all of his impairments, including those caused by DAA. Only after that initial disability finding is made does SSR 13-2p come into play and *Hoban's* directive that "because medical science does not currently have a method for reliably predicting the improvement of a co-occurring mental disorder without substance abuse, the ALJ must rely on evidence in the case, and not exclusively on a medical expert, to ascertain the materiality of a claimant's DAA in the context of a co-occurring mental disorder." 2016 WL 4059200 at *6.[4]

---

[4] Further, *Hoban* is distinguishable from the present case. There, the ALJ found that the claimant's alcohol abuse was a severe impairment at Step Two, but did not find any other severe mental impairments. 2016 WL 4059200 at *2, *4. The ALJ found that the claimant would be disabled at Step Four when considering the effects of her alcohol use. *Id.* at *4. The ALJ then conducted the five-step inquiry a second time and determined that alcoholism was material to the disability determination and therefore the claimant was not disabled. *Id.* The court found no error on this point. However, the court did agree with the claimant that the ALJ erred by stating that there was no way to establish a severe mental health impairment without an extended period of sobriety. *Id.* at *5–6. The record did not contain any authority for this proposition, and the ALJ improperly relied on medical opinions from psychologists in other cases. *Id.* at *6. The error therefore was that the ALJ did not follow SSR 13-2p's directive that in order "'[t]o support a finding that DAA is material, we must have evidence in the case record that establishes that a claimant with a co-occurring mental disorder(s) would not be disabled in the absence of DAA. Unlike cases involving physical impairments, we do not permit adjudicators to rely exclusively on medical expertise and the nature of claimant's mental disorder.'" *Id.* (quoting SSR 13-2p, 2013 WL 621536 at *9). The court concluded that "the ALJ did not comply with SSR 13-2p because he failed to rely on evidence in the record to support his

Here, the ALJ conducted the five-step inquiry and determined that Plaintiff was not disabled. The ALJ did note that Plaintiff had a long history of alcohol abuse and that there were no specific periods of sobriety in the record on which to base any opinion on the materiality of Plaintiff's substance abuse; therefore, "evidence of alcohol abuse is instead used in general and viewed in light of the other available evidence." (AR 29–31). Thus, it is clear to the Court from a plain reading of the ALJ's decision that the ALJ properly considered the effects of DAA when assessing the record and making the disability determination, and the ALJ did not make an improper materiality finding. *See Missell v. Colvin*, 2014 WL 2048082, *4–5 (D. Ariz. May 19, 2014) (rejecting claimant's argument that ALJ can only consider DAA if ALJ is going to presume claimant is disabled and do a DAA analysis, and further finding ALJ did not err by considering claimant's DAA in making credibility determination); *Curry v. Colvin*, 2015 WL 4067193, *4 (D. Or. May 11, 2015) ("ALJ may make reference to a claimant's substance abuse as relevant to corollary matters (*e.g.*, evidence inconsistent with a claimant's testimony) without conducting the drug-and-alcohol analysis").

Finally, as to Plaintiff's contention that the portions of Dr. Khushalani's testimony noted as "inaudible" require remand for further proceedings, the Court finds no error on this point. First, Plaintiff misconstrues Dr. Khushalani's testimony by stating that Dr. Khushalani testified that he would have marked limitations in some areas when alcohol use was included. (Doc. 16 at 8). But this is not what Dr. Khushalani actually said. He testified that without alcohol, Plaintiff would have "difficulty doing detailed and complex tasks" and that he should only have "occasional" exposure to the public, and that with alcohol Plaintiff's parameters would change drastically. (AR 106–107). When asked about the marked limitation in carrying out simple instructions that Dr. Abreu assessed,

---

conclusion that a reliable mental health diagnosis could not be made absent a period of abstinence, and he failed to otherwise support his finding that absent her alcohol use, Plaintiff's mental health disorders were not severe impairments." *Id.* at *8. Neither of these issues are at play in the present matter. Thus, the portion of *Hoban* discussed by Plaintiff must be read in its context, and when doing so, it is clear that the issues in *Hoban* are distinct from the issues in the present case.

Dr. Khushalani stated that he thought this limitation would be with the use of alcohol, but also that he thought this limitation was not credible because Plaintiff was able to do several simple tasks so he should not have any difficulty with doing simple tasks. (AR 108–109). Second, while there are several instances in the transcript where a word or short phrase is indicated as "inaudible," the Court has carefully reviewed the transcript and finds it sufficient to support the ALJ's decision and this Court's review of the issues Plaintiff raises on appeal. "[A] federal court's review of Social Security determinations is quite limited[,]" and courts "leave it to the ALJ to . . . resolve ambiguities in the record." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotations and citation omitted). Accordingly, the Court finds no error on this point.[5]

## B. Medical Opinions

In weighing medical source opinions in Social Security cases, the Ninth Circuit

---

[5] The Court also rejects Plaintiff's related argument that the ALJ improperly found that DAA was not a severe impairment at Step Two. Plaintiff suggests that because the ALJ found that Plaintiff's alcohol abuse was not a severe impairment at Step Two, the ALJ must have therefore necessarily also failed to take Plaintiff's drinking into account in the remaining steps of the analysis. This contention is belied by the record. While the ALJ did not find that Plaintiff's alcohol abuse was a severe impairment at Step Two, as explained above, the ALJ clearly stated that she considered the evidence of Plaintiff's alcohol abuse in general and in light of the other evidence in the record, and she noted it multiple times throughout her opinion. (AR 29–32). Plaintiff himself admits that the ALJ noted his alcohol abuse at Step Three. (AR 27). Further, to the extent that the ALJ did err in failing to find that Plaintiff's DAA was a severe impairment at Step Two, any error was harmless. The decision reflects that the ALJ took Plaintiff's history of alcohol abuse into consideration when making her disability determination analysis—she specifically found Plaintiff had moderate limitations in interacting with others due to memory impairments, affective problems, and alcohol abuse, and the RFC includes mental-health related limitations to occasional interaction with the public, supervisors, and co-workers, and simple, routine repetitive tasks. (AR 27–28); *see Buck v. Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir. 2017) (ALJ is required to consider all of a claimant's impairments, whether severe or not, in assessing RFC); *see also Gonzalez v. Sullivan*, 914 F.2d 1197, 1200–01 (9th Cir. 1990) ("The regulations merely require the Secretary to review the symptoms and make specific findings essential to the conclusion . . . It is unnecessary to require the Secretary, as a matter of law, to state why a claimant failed to satisfy every different section of the listing of impairments." (internal quotations and citations omitted)); SSR 96–8p, 1996 WL 374184 at *5 ("RFC assessment must be based on all the relevant evidence in the case record" and ALJ "must consider all allegations of physical and mental limitations or restrictions"); 20 C.F.R. § 416.920(e) (ALJ must consider claimant's subjective experiences of pain); *contra Mercado v. Berryhill*, 2017 WL 4029222, at *6 (N.D. Cal. Sept. 13, 2017) (ALJ's rejection of claimant's mental impairments at Step Two was not harmless where RFC did not contain any mental health related limitations). Here, Plaintiff has not set forth any specific functional limitations due to his drinking that the ALJ failed to consider in her analysis.

distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Lester*, 81 F.3d at 830). "While the opinion of a treating physician is thus entitled to greater weight than that of an examining physician, the opinion of an examining physician is entitled to greater weight than that of a non-examining physician." *Garrison*, 759 F.3d at 1012.

"If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be entitled to the greatest weight . . . even if it does not meet the test for controlling weight." *Garrison*, 759 F.3d at 1012 (internal quotations and citations omitted). Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with the medical records, inconsistency with a claimant's testimony, or inconsistency with a claimant's ADL. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). "An ALJ can satisfy the substantial evidence requirement by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. However, "when evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Finally, the ALJ must evaluate medical opinions according to the requirements set

out in 20 C.F.R. § 404.1527(c): (1) the frequency of examination and the length, nature, and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the consistency of the opinion and the record as a whole; (4) whether the physician is a specialist; and (5) other factors that would support or contradict the opinion.

Here, the ALJ gave limited weight to Dr. Drake's and N.P. Thomas's[6] opinions because they were derived from a short period of treatment of one to three visits, did not depict a 12-month duration for treatment, and appeared to be based on Plaintiff's subjective complaints without basis in their own treating records to substantiate such significant limitations. (AR 32–33). The Court finds that at least two of these reasons are specific and legitimate reasons supported by the record to discount the opinions.

First, the ALJ noted that the opinions were derived from a short period of treatment. The record documents that Dr. Drake and N.P. Thomas each saw Plaintiff only twice before rendering their opinions.[7] The Court finds that this is a specific and legitimate reason to discount the opinions. While Plaintiff relies on 20 C.F.R. § 404.1527(c)(2) for the proposition that treating source opinions are generally more persuasive, the focus of this regulation is on the length and extent of the treating physician relationship. 20 C.F.R. § 404.1527(c)(2) explains that, "[g]enerally, we give more weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from

---

[6] While Thomas is not considered an acceptable medical source, opinions from other sources must still be evaluated and the ALJ may discount their testimony only by giving reasons germane to each witness. *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) ("Only physicians and certain other qualified specialists are considered acceptable medical sources."). Nurse practitioners, physician assistants, and therapists are considered "other sources." 20 C.F.R. § 404.1513(d). Pursuant to SSR 06-03p, "[i]nformation from these 'other sources' cannot establish the existence of a medically determinable impairment. . . . However, information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function."
[7] While Thomas states that she saw Plaintiff three times, the record only includes two of these visits.

reports of individual examinations, such as consultative examinations or brief hospitalizations." Further, "[g]enerally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the" opinion. *Id.* at (i). Thus, the focus is on emphasizing the history over time of the treating physician relationship and the frequency of examination, both of which are absent here.

Second, the ALJ may properly reject a physician's opinion that is based on a claimant's subjective complaints when those subjective complaints have been discredited. *See Tommasetti*, 533 F.3d at 1041 ("An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible."); *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (ALJ was free to reject examining physician's opinion where it was based on claimant's subjective complaints and ALJ had properly discounted claimant's credibility). Here, the ALJ found that Plaintiff's subjective symptom testimony[8] was not entirely consistent with the medical and other evidence of record, and that Plaintiff's allegations exceeded the limitations reasonably expected from the medical findings. (AR 28, 33). The ALJ specifically noted that Plaintiff's "treating physicians consistently characterized the impairments as 'minimal', 'mild', 'slight', 'normal', and 'unremarkable', with reference to the clinical and laboratory findings, which seems quite

---

[8] SSR 16-3p went into effect on March 16, 2016 and supersedes SSR 96-7p, the previous policy governing the evaluation of symptoms. SSR 16-3p, 2016 WL 1119029, *1. The ruling indicates that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." *Id.* Moreover, "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character[;] [i]nstead, we will more closely follow our regulatory language regarding symptom evaluation." *Id.* This ruling is consistent with the previous policy and clarifies rather than changes existing law. Under either ruling, the ALJ is required to consider the claimant's report of her symptoms against the record—in SSR 96-7p, this resulted in a "credibility" analysis; in SSR 16-3, this allows the adjudicator to evaluate "consistency." *Compare* SSR 16-3p *with* SSR 96-7p (both rely on two step process followed by an evaluation of claimant's testimony and contain the same factors for consideration). "The change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character," but "obviously administrative law judges will continue to assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016).

disproportionate to the severity of pain [Plaintiff] has alleged." (AR 33). The ALJ also noted Plaintiff's non-compliance with treatment, his use of a non-prescribed walker/cane, and that Plaintiff was able to do certain activities that would have been too difficult with the severity and duration of hand problems he alleged.[9] (AR 33–34). Plaintiff does not challenge the ALJ's credibility finding, thus any argument on this point is waived.

Further, the ALJ found that Drake's and Thomas's opinions were not supported by their own treating records. "An ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings." *Tonapetyan*, 242 F.3d at 1149 (opinion properly rejected where "it was unsupported by rationale or treatment notes, and offered no objective medical findings to support the existence of [the claimant's] alleged conditions"); *Tommasetti*, 533 F.3d at 1041 (doctor's records did not provide support for limitations assessed on sitting and standing and need for breaks; incongruity was specific and legitimate reason to reject opinion); *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) ("A conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician or another treating provider."). For example, the ALJ noted that "the treating records indicated mostly normal findings on physical examination" and that "after initially presenting with a walker and unsteady gait, [Plaintiff] later exhibited steady gait and normal strength."[10] (AR 32). "In addition, [Plaintiff's] EMG findings

---

[9] For example, at an appointment with Dr. Cary, Plaintiff reported shakiness and lack of coordination, but the doctor observed him using his iPhone with both hands and normal dexterity. (AR 704). Dr. Cary noted that the dramatic dysmetria Plaintiff displayed on examination was inconsistent with his ability to use his phone. (AR 705). At the same appointment, when Plaintiff walked into the office unaware that Dr. Cary was observing him, his gait was normal, but on examination it was wide based with a shortened stride. (AR 704–705). Similarly, Dr. Rothbaum observed that Plaintiff stated he used his phone frequently, indicating neurologic control, and grip strength was 5/5 bilaterally. (AR 1066). While Plaintiff entered Dr. Rothbaum's office using a walker, he had no difficulty in the exam room, and though he initially showed a slight left limp, he was also able to ambulate holding a cane in his left hand without difficulty. *Id.*

[10] When Plaintiff first saw Thomas, he reported that he always used a cane or walker and on exam he had loss of strength in the lower extremities causing balance issues. (AR 1084). At the second appointment, Plaintiff was ambulatory without difficulty, had a steady gait, and upper and lower extremity strength was equal and appropriate for age. (AR 1079). When Thomas made her RFC assessment four months later, she opined that Plaintiff could never stand or lift, and used a walker. (AR 1151).

were normal despite his allegations of numbness and difficulty holding things."[11] (AR 32–33).

Finally, the ALJ discounted the opinions because they did not depict a 12-month duration for treatment. The Social Security Act defines disability as the inability to engage in substantial gainful activity due to any medically determinable physical or mental impairment or combination of impairments that has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d). However, there is no requirement that a claimant see any one specific provider for at least 12 months. Thus, to the extent that this reason goes to the ALJ's first point that the opinions were based on a short period of treatment, as discussed above, the Court finds no error. Conversely, to the extent that the ALJ discounted the opinions because Plaintiff was not treated for 12 months by Drake or Thomas, this was not a specific and legitimate reason to discount the opinions. However, because the ALJ provided other, legally sufficient reasons for discounting the opinions, any error is harmless as long as there was at least one valid reason provided. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195–97 (9th Cir. 2004) (so long as there remains "substantial evidence supporting the ALJ's decision" and the error "does not negate the validity of the ALJ's ultimate conclusion," such error is deemed harmless and does not warrant reversal); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (where "the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ"); *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985) ("The medical evidence presented perhaps would permit a reasonable mind to make a finding of disability. It also would permit a finding of no disability. When there is evidence sufficient to support either outcome, we must affirm the decision actually made.").[12]

---

[11] Plaintiff told Dr. Drake that he had pain and spasms in his right hand, and on exam fine coordination testing was poor, but the nerve study was normal. (AR 1107, 1109). This is reflected in Dr. Drake's RFC assessment finding no limitations on reaching, handling, or fingering (AR 1155), but conflicts with Thomas's assessment that Plaintiff could never finger and only handle and reach for 2% of the workday. (AR 1152).

[12] The undersigned finds it interesting that Plaintiff challenges the ALJ's medical weight findings for both Dr. Drake and N.P. Thomas, as they assessed different and conflicting limitations. For example, while Dr. Drake assessed no significant limitations with

## V. Remedy

A federal court may affirm, modify, reverse, or remand a social security case. 42 U.S.C. § 405(g). Absent legal error or a lack of substantial evidence supporting the ALJ's findings, this Court is required to affirm the ALJ's decision. After considering the record as a whole, this Court simply determines whether there is substantial evidence for a reasonable trier of fact to accept as adequate to support the ALJ's decision. *Valentine*, 574 F.3d at 690.

Here, the undersigned finds that the ALJ's decision is supported by substantial evidence and is free from legal error. Accordingly, in light of the foregoing,

**IT IS HEREBY ORDERED** that the decision of the Commissioner of Social Security is **affirmed**. The Clerk shall enter judgment accordingly and close its file on this matter.

Dated this 19th day of September, 2019.

Eric J. Markovich
United States Magistrate Judge

---

reaching, handling, or fingering (which is consistent with the ALJ's RFC), Thomas opined that Plaintiff could only reach and handle for 2% of the workday and never finger. Dr. Drake opined that Plaintiff did not need to lie down or take breaks beyond the usual and customary ones (which is also consistent with the RFC), while Thomas opined that Plaintiff would need to lie down for more than 1.5 hours and would need additional breaks because he was unable to concentrate and his arm movements were limited by pain. Thus, while Plaintiff argues both opinions should have been given more weight, it is unclear how they would be reconciled in the RFC.